## Daniel E. Donovan, Appellant, *v.* James H. Van De Mark, Respondent.

To create a valid trust, under the statute of uses and trusts (2 R. S., 728, § 55), it is not necessary that the trust should be stated in the very words of the statute ; it is sufficient if a purpose within the statute is clearly embraced in the language used, for the execution of which the trustee may be clothed with the legal title.

The will of S., by its terms, gave to C. all the testator's real and personal estate, "in trust, nevertheless, for the necessary support and maintenance of" the testator's son A., "during his natural life," and after the death of A., gave said estate to the lawful children of A. C. was appointed executor, and was authorized to sell certain of the real estate. In an action of ejectment by plaintiff as successor to C., as trustee, to recover possession of premises so authorized to be sold, *held,* that the will gave to C., directly or inferentially, power to manage the estate, to receive the rents and profits and apply them according to his judgment in the support and maintenance of A. ; and that, therefore, a valid trust was created, and a legal title vested in the trustee.

*Verdin* v. *Slocum* (71 N. Y., 345), distinguished.

*Donovan* v. *Van De Mark* (18 Hun, 200), reversed.

(Argued September 15, 1879; decided September 23, 1879.)

Appeal from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of defendant, entered upon a decision of the court on trial, without a jury. (Reported below, 18 Hun, 200.)

This was an action of ejectment, brought by plaintiff as trustee under the will of Andries Schoonmaker, to recover possession of certain premises, of which said testator died seized.

George Chambers, the trustee named in the will, declined to act and plaintiff was appointed trustee in his stead.

The provisions of the will upon which the litigation depended are set forth in the opinion.

*J. E. Van Etten,* for appellant. The will vested the title to the estate in the trustee during the life of Abraham.

(*Wagstaff* v. *Lowerre*, 23 Barb., 221; Willard on Real Estate, 470–506; 2 R. S., 57; Willard on Executors, 369, 370; *Jackson ex. dem. Decker* v. *Merrell*, 6 J. R,. 185; *Jackson ex. dem. Livingston* v. *DeLancy*, 13 id., 537; *Smith* v. *Bowen*, 35 N. Y., 83; *King* v. *Whaley*, 59 Barb., 72; *Jackson ex. dem. Herrick* v. *Babcock*, 12 J. R., 389.) As it would be impossible for the trustee to perform the acts enjoined by the will without having the title the law gives him the title by implication. (*Brewster* v. *Striker*, 2 N. Y., 19; *Wagstaff* v. *Lawrence*, 23 Barb., 221.) Where an executor is designated to execute a trust, he is not invested with a character distinct and independent of that of trustee, although he be called "executor." (*Brewster* v. *Striker*, 2 N. Y., 19; *Stagg* v. *Beekman*, 2 Edw. Chy., 89; 2 R. S., 94, § 66; Willard on Executors, 36–44.) The trustee by the express terms of the will as well as by implication of law having a title vested in him had the right "to receive the rents and profits" as incident or appurtenant to that title, and such right is necessarily exclusive. (*Beekman* v. *Bower*, 23 N. Y., 314; *Wood* v. *Wood*, 5 Paige, 603; *Vail* v. *Vail*, 4 id., 317–328, etc.; Willard on Real Estate, 203 and 89, 90; *King* v. *Whaley*, 59 Barb., 72; *Broadner* v. *Falkner*, 34 N. Y., 347; Gerard on Titles, [2d ed.], 405; *Marvin* v. *Brewster Iron Co.*, 55 N. Y., 538; *Pollock* v. *Crouise*, 12 How., 363; *Jackson ex. dem. Yates* v. *Hathaway*, 15 J. R., 447; *Le Roy* v. *Platt*, 4 Paige, 77.) The words "necessary support and maintenance" as used in the will limited the application of the fund to the actual necessity of Abraham, of which the trustee was to judge. (*Brown* v. *Harris*, 25 Barb., 135; *Stagg* v. *Beekman*, 2 Edm. Ch., 89; *Mason* v. *Jones*, 2 Barb., 229; Willard's Real Estate, 505; *Beekman* v. *Bouser*, 23 N. Y., 314; *Fisher* v. *Field*, 10 J. R., 495; *Gomez* v. *Tradesman Bank*, 4 Sandf., 102; 10 Conn., 243; 4 Dana, 357; *Vernon* v. *Vernon*, 53 N. Y., 351; 64 id., 348–356; 2 Story Eq., § 1065; *Maurice* v. *Maurice*, 43 N. Y., 368; *DuBois* v. *Ray*, 35 N. Y., 162; *James* v. *Beasley*, 14 Hun, 523; *Coster* v. *Lorillard*, 14

Wend., 321; 64 N. Y., 347; 2 id., 307; 1 R. S., 748, § 2; *Parks* v. *Parks*, 9 Paige, 109; *Tucker* v. *Weeks*, 2 Sweeney, 736; Willard on Executors, 307; *James* v. *Bearsley*, 14 Hun, 523.)

*J. Newton Fiero*, for respondent. The provisions of the first clause of the will did not create a valid trust, and the devise vested the legal estate in the testator's son Abraham. (1 R. S., 727, § 45; id., 728, § 47; id., 729, § 49; *Hotch-kiss* v. *Eltinge* 36 Barb., 38, 44; *Ransom* v. *Lampman*, 1 Seld., 456, 462; *Wright* v. *Douglass*, 3 id., 563; *Vernon* v. *Vernon*, 53 N. Y., 351; *Hiermans* v. *Robinson*, 64 id., 332, 340; *Jarvis* v. *Babcock*, 5 Barb., 139, 144.) The second clause of the, will being a mere power of sale to the executor, vested no estate in him as a trustee. (1 R. S., 729, §§ 56, 62, 69; *Maurice* v. *Maurice*, 43 N. Y., 313, 363, 364; *Vernon* v. *Vernon*, 53 id., 351, 357.)

DANFORTH, J. The words of the will plainly indicate the intention of the testator: "I give," he says, "devise and bequeath to George Chambers all my estate, in trust nevertheless, for the necessary support and maintenance of my son Abraham during his natural life, and after his death I give and bequeath the said estate to Abraham's children." "I appoint" Chambers executor of this will, "and empower him to sell" certain premises; those in question.

First. The title is conferred on Chambers, but it is apparent that the testator did not intend that he should take it absolutely, and for his own benefit, for although he gives to him the land, it is in trust.

Second. Nor did he intend that the beneficiary, his son Abraham, should have the use or control of the land or its whole proceeds, for the trust declared is for his "necessary support and maintenance," and if the respondent's contention is right, these words of qualification must be disregarded. If the son takes the whole he may buy therewith not only "necessary meat, drinks, apparel, necessary physic, and such

other necessaries," and so receive his support and mainte-
nance, but articles purely ornamental and therefore in no
wise contributing to either, nor would he be limited to those
things which were for his personal advantage, but might
waste his substance among his companions, not necessarily
in riotous living, although the evidence suggests its possi-
bility, but in pleasant, and if the money was his own, not
unreasonable entertainments of friends ; he might even haz-
ard the fruits of the real estate in trade, or speculation, or
games of chance, and so be deprived of that aliment, cloth-
ing and shelter, and other necessaries, which only his father
intended to secure for him ; as is clearly indicated by the
words, "support and maintenance." These are words of
limitation; they define the purpose of the trust, and would
of themselves require the determination we are about to
make. But there is moreover the word "necessary." This
emphasizes and gives increased significance to the others,
modifies and narrows their application, and from the whole
I think it is inferable not only that Abraham was not
to take for himself, but that some person other than himself
should determine the extent of his allowance. If otherwise
he would be left to judge of his own necessities which would
contravene the maxim *absque non debet esse judex in propria
causa*, and the words would according to the general sense
of man have no restraining force. It follows from these
considerations that Chambers the trustee is to determine how
much and what is "necessary" for the testator's son, his
support and maintenance, and that the property is vested in
him in order that his determination may be made effectual,
to give or to withhold. This can be done only by his man-
agement of the estate, his receipt of rents or profits, and his
application of them according to his judgment in the sup-
port and maintenance of Abraham. All these powers are
plainly given, or to be inferred. This conclusion is strength-
ened by those provisions of the will under which Chambers
is empowered at his discretion to bargain, sell and convey
the premises. He has then a power to manage, and a duty

to perform in respect to the estate. It would seem therefore that a trust valid under the provisions of title 2 (p. 11), chapter 1, article 2, § 55, was created, and a legal title vested in the trustee. It would not be profitable to examine or collate the criticisms of courts upon special phrases contained in instruments of this nature, for however they hold in regard to particular words or provisions, it will be found they all agree that it is not necessary the trust should be stated in the very words of the statute, but it is sufficient if a purpose within the statute is clearly embraced in the language used, for the execution of which the trustee may be clothed with the legal title. (*Leggett* v. *Perkins*, 2 N. Y., 297; *Beekman* v. *Bonsor*, 23 id., 298; *Vernon* v. *Vernon*, 53 id., 351; *Heermans* v. *Robertson*, 64 id., 332.)

*Verdin* v. *Slocum* (71 N. Y., 345), on which the respondent relies, is quite different from the case before us. In that case the trustees were to permit the beneficiary to take all the rents, etc., themselves exercising no discretion or control.

As the judgment of the court below was given upon a construction of the will different from that above rendered, it should be reversed, and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.